IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JAMES SIMMERS,                          :
                                        :
                     Petitioner,        :
                                        :
         v.                             :        Civil Action No. 17-1596-RGA
                                        :
KOLAWOLE AKINBABYO, Warden,             :
And ATTORNEY GENERAL OF THE             :
STATE OF DELAWARE,                      :
                                        :
                     Respondents.       :
_____

## MEMORANDUM OPINION

James Simmers.  *Pro se* Petitioner.

Georgia Catherine Pham, Deputy Attorney General of the Delaware Department of Justice,
Wilmington, Delaware.  Attorney for Respondents.

March 22, 2021
Wilmington, Delaware

/s/ Richard G. Andrews
ANDREWS, UNITED STATES DISTRICT JUDGE:

Petitioner James Simmers filed the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition") pending before the Court when he was incarcerated at the Howard Young Correctional Institution in Wilmington, Delaware.[1]  (D.I. 1; D.I. 2)  The State filed an Answer in opposition.  (D.I. 22)  For the reasons discussed, the Court will dismiss the Petition.

## I.    BACKGROUND

On March 12, 2013, a 27-year-old intellectually challenged woman ("B.A." or "victim") left the home she shared with her mother in Newark, Delaware, to take one of her usual walks around her neighborhood.  (D.I. 22 at 3)  Because B.A. was gone longer than her usual hour, her mother became concerned and asked their renter to look for B.A., but he was unable to find her.  B.A. returned by herself about a half-hour later.  (*Id.*)

When B.A. entered the house, her head was down.  (*Id.*)  She spoke to the renter, who encouraged her to speak to her mother.  B.A., upset and crying, told her mother that "Jimmy," later identified as Petitioner, wanted to walk in the woods with her and had sexually assaulted her there.  (*Id.* at 3-4)

B.A.'s mother immediately called the police.  (*Id.* at 4)  B.A. told the police that "Jimmy" had been riding a bike and was wearing a camouflage outfit that consisted of a black shirt and dark pants.  The police located Petitioner's bike and found that he lived in the neighborhood.  *(Id.)*

A sexual assault nurse examiner attempted to conduct a sexual assault examination in the

---

[1]Although Petitioner was released on Level IV supervision during the pendency of this proceeding, he is still "in custody" for the purposes of pursuing relief under 28 U.S.C. § 2254.

early morning hours of March 13, 2014, after B.A. had already urinated, bathed and changed clothes.  (*Id*.)  Because B.A. could not tolerate much of the exam, the nurse only performed an exterior exam for injuries and took some swabbings.  The nurse noted that B.A. did not have any visible injuries.  Officer Matthew DiSabatino of the New Castle County Police Department was present for B.A.'s interview at the Child Advocacy Center on March 13, 2014.  At that time, B.A. was frightened, crying, and hesitant but gave a description of "Jimmy" and his bike.  Approximately two weeks before trial, Officer DiSabatino took B.A. to the woods where she stated the crime occurred.  B.A. was fearful of going back to the location and insisted that a female officer accompany them.  (*Id*. at 4)  B.A. pointed Officer DiSabatino to the location where Petitioner assaulted her and then immediately left the area.  B.A. was positive about the location.  (*Id*. at 4-5)

At trial, B.A. testified that "Jimmy" did "nasty stuff" to her in the woods that included kissing her, touching her "boobs," and putting his fingers inside her "bottom" and "pussy."  (*Id*. at 5)  B.A. testified that what "Jimmy" did physically hurt and she told him to stop.  B.A. said that "Jimmy" showed her his penis.  B.A. said that what Jimmy did made her sad and upset and "everything" and that she did not want him to touch her.  (*Id*.)

In October 2014, a Delaware Superior Court jury found Petitioner guilty of two counts of fourth degree rape and one count of  second degree exposure.  *See State v. Simmers*, 2015 WL 721292, at *1 (Del. Super. Ct. Feb. 18, 2015).  On November 5, 2014, Petitioner filed a motion for a new trial asserting the existence of newly discovered evidence.  (D.I. 23-3 at 56-63)  The Superior Court denied the motion on February 18, 2015.  *See Simmers*, 2015 WL 721292, at *5.  On March 20, 2015, the Superior Court sentenced Petitioner to a total of twenty years and thirty

days at Level V, suspended after serving six years and thirty days for decreasing levels of supervision.  (D.I. 22 at 2; D.I. 23-9 at 63-69)  Petitioner appealed the denial of his motion for new trial, and the Delaware Supreme Court affirmed the Superior Court's decision on October 22, 2015.  *See Simmers v. State*, 126 A.3d 643 (Table),  2015 WL 6459686, at *1 (Del. Oct. 22, 2015).

In November 2015, Petitioner filed a *pro se* motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61.  (D.I. 23-9 at 69-72)  The Superior Court appointed counsel to represent Petitioner.  Petitioner filed a *pro se* addendum to his Rule 61 motion raising additional claims.  (*Id*. at 77-86)   Post-conviction counsel filed a motion and supporting memorandum to withdraw as counsel.  (*Id*. at 126-46)   Petitioner filed an amendment to his *pro se* Rule 61 motion.  (*Id*. at 147-51)   The Superior Court denied the Rule 61 motions in January 2017.  *See State v. Simmers*, ID No. 1403009301, Order, Streett, J. (Del. Super. Ct. Jan. 24, 2017); (D.I. 23-9 at 160-177)  The Delaware Supreme Court affirmed that decision on September 25, 2017.  *See Simmers v. State*, 171 A.3d 1115 (Table), 2017 WL 4249945 (Del. Sept. 25, 2017).

## II.      GOVERNING LEGAL PRINCIPLES

### A.  Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law.  *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971).  The AEDPA states, in pertinent part:

3

>An application for a writ of habeas corpus on behalf of a person in
>custody pursuant to the judgment of a State court shall not be
>granted unless it appears that –
>
>(A) the applicant has exhausted the remedies available in the courts
>of the State; or
>
>(B)(i)  there is an absence of available State corrective process; or
>    (ii) circumstances exist that render such process ineffective to
>    protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989). A federal legal claim is "fairly presented" to state courts when there is: "(1) reliance on pertinent federal cases employing constitutional analysis; (2) reliance on state cases employing constitutional analysis in like fact situations; (3) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution; [or] (4) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *See Lines v. Larkins,* 208 F.3d 153, 160

(3d Cir. 2000); *Teague v. Lane,* 489 U.S. 288, 297-98 (1989).  Although treated as technically exhausted, such claims are nonetheless procedurally defaulted.  *See Lines,* 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).  Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted.  *See Coleman*, 501 U.S. at 750*; Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims.  *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51.  To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986).  To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001).  A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496.  Actual innocence means factual innocence, not legal insufficiency. *See Bousley v.*

5

*United States*, 523 U.S. 614, 623 (1998).  In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial –  that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537-38 (2006); *see Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

### B.   Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial.  28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001).  A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground.  *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).  The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).  As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  *Id.* at 99.

6

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct.  *See* 28 U.S.C. § 2254(e)(1).  This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary.  *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to "factual issues," whereas the unreasonable application standard of § 2254(d)(2) applies to "decisions").

## III.    DISCUSSION

For the most part, Petitioner's timely filed § 2254 Petition and Supplemental Memorandum assert numerous vague and disjointed complaints along with several more familiar constitutional claims.  The State has presented a thorough summary of the claims it can glean from Petitioner's Petitioner and Supplement.  (D.I. 22 at 8-9)  Liberally construing Petitioner's filings within the context of the State's thorough examination and the Court's own examination, the Court views the Petition and Supplement as asserting the following grounds for relief:[2] (1) Petitioner is actually innocent because the State, victim, and police lied about the incident; (2) there was insufficient evidence to support Petitioner's convictions; (3) Petitioner was not informed of his *Miranda* rights until he was charged with two rape offenses; (4) the manner in which the State disclosed the information about another "groping incident" involving the victim

---

[2]The Court agrees with the State's identification of several claims it categorizes as vague and conclusory or not alleging a violation of federal law.  (D.I. 22 at 7-8)  Two examples of these claims include Petitioner's complaints about an unnamed newspaper story that somehow caused him to be jumped in prison, or the fact that his coveralls and phone were taken from him.  (D.I. 1 at 4, 6, 8, 15, 31, 34; D.I. 2 at 6)  Given their vagueness and overall failure to state grounds for habeas relief, the Court will summarily deny the allegations identified by the State.

violated *Brady v. Maryland* and warranted a new trial; and (5) trial and appellate counsel provided ineffective assistance in eleven different instances.

### A.   Claim One: Actual Innocence

Throughout his Petition and Supplemental Memorandum, Petitioner repeatedly asserts that the case against him was based upon lies told by the State, the victim, and the police. Examples of his statements include: "[the victim] was put on the stand and she lied about me, I never digitally penetrated her vagina or anus" (D.I. 1 at 6); "seems to me they [State, cops, and State courts] all worked together to make this case on me.  How can you have two rapes with no DNA" (*Id.* at 7); "this was a big coverup by the DA and cop, to make this case on me" (*Id.* at 9); "the DA and cop made up lies about me to make this case on me" (*Id.* at 7); "I have been falsely convicted" (*Id.* at 11); "DA and cop said anything they could make up a case on me (D.I. 2 at 8); "I [] never digitally penetrated [victim], vagina or anus.  She lied in the jury trial about me." (*Id.* at 9).  The Court construes these allegations as asserting Petitioner's actual innocence.

It is well- settled that, in "certain exceptional cases involving a compelling claim of actual innocence," a prisoner may assert actual innocence as a gateway for obtaining habeas review of defaulted claims.  *House v. Bell*, 547 U.S. 518, 521, 536-37 (2006).  However, whether a freestanding claim of actual innocence is cognizable on federal habeas review remains an open question in Supreme Court jurisprudence.  *See Reeves v. Fayette SCI*, 897 F.3d 154, 160 n.4 (3d Cir. 2018) (citing *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013)).  Assuming, *arguendo*, that an assertion of actual innocence could constitute a freestanding claim, a petitioner's burden on any such claim "would necessarily be extraordinarily high" and "more demanding" than that applied to gateway actual-innocence claims.  *Herrera v. Collins*, 506 U.S. 390, 416 (1993); *see*

8

*also Reeves*, 897 F.3d at 160 n.4 (describing hypothetical freestanding actual-innocence standard as "more demanding" than that applied to gateway actual-innocence claims).  To put the burden for establishing a freestanding claim of actual innocence in perspective, a gateway actual innocence claim that is asserted in an effort to overcome the statute of limitations bar for habeas cases will only prevail if it is based on "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence [] that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Here, Petitioner's conclusory and unsupported assertions do not satisfy the *McQuiggan/Schlup* standard for actual innocence.  Hence, after viewing Petitioner's unreliable assertions in context with the record, the Court concludes that Petitioner's assertion of actual innocence does not provide a basis for relief  under § 2254.

### B.   Claim Two:  Insufficient Evidence

In Claim Two, Petitioner appears to contend that there was insufficient evidence to support his convictions for rape and indecent exposure because there were no DNA results, relevant crime photos, or eyewitnesses.  (D.I. 1 at 3-4, 11, 26, 32-33; D.I. 2 at 2-5)  The record reveals that Petitioner did not exhaust state remedies for Claim Two, because he did not raise sufficiency of the evidence as a freestanding claim in his motion for new trial or in his direct appeal.  In fact, on post-conviction appeal, the Delaware Supreme Court concluded that any independent sufficiency of the evidence claim that was raised within an ineffective assistance of counsel claim was procedurally barred under Rule 61(i)(3) due to Petitioner's failure to raise the issue in the proceedings leading to the judgment of conviction.  *See Simmers*, 2017 WL 4249945, at *2.

9

By applying the procedural bar of Rule 61(i)(3), the Delaware Supreme Court articulated a "plain statement" under *Harris v. Reed*, 489 U.S. 255, 263-64 (1984) that its decision rested on state law grounds.  In turn, Delaware Superior Court Criminal Rule 61(i)(3) is an independent and adequate state procedural rule precluding federal habeas review of a claim's merits absent a showing of cause and prejudice, or a miscarriage of justice.  *See McCleaf v. Carroll*, 416 F. Supp. 2d 283, 296 (D. Del. 2006); *Mayfield v. Carroll*, 2005 WL 2654283 (D. Del. Oct. 11, 2005).  Thus, the Court cannot review the merits of Claim Two absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the Claim is not reviewed.

To the extent Petitioner's allegation that trial and appellate counsel were ineffective for failing to challenge the sufficiency of the evidence should be viewed as an attempt to establish cause, it is unavailing.  An attorney's error can constitute cause for a procedural default, but only if the petitioner first presented that ineffective assistance of counsel claim to the state courts as an independent claim and it was determined that the attorney's error amounted to constitutionally ineffective assistance.  *See Murray*, 477 U.S. at 488–89.  As discussed later in this Opinion, the Court concludes that Petitioner's complaint about defense and appellate counsel's alleged failure to challenge the sufficiency of the evidence is meritless.  *See infra* at Section III.E.5.  Therefore, Petitioner has failed to establish trial and appellate counsel's performance as cause for his default of Claim Two.

In the absence of cause, the Court will not address the issue of prejudice.  In addition, Petitioner's failure to provide new reliable evidence of his actual innocence precludes the

application of the miscarriage of justice exception to his procedural default.  Thus, the Court will deny Claim Two for being procedurally barred from habeas review.

### C.  Claim Three:  Violation of  Petitioner's *Miranda* Rights

Petitioner alleges that he does not "think I was read my rights that day till they put two rape charges on me." (D.I. 1 at 15)  The State asserts that Petitioner was interviewed by the police after he was read his rights and that he initialed a *Miranda* waiver form.  (D.I. 22 at 9)  The Court has not discovered a copy of the *Miranda* waiver form in the state court record.  It has, however, found a reference to Petitioner's statement in the transcript of a teleconference held between counsel for the parties and the trial judge.  (D.I. 25-8 at 20-21)  The relevant portion of the teleconference focused on the fact that the State informed trial counsel it did not intend to introduce the statement at trial.  (*Id*. at 21)  The trial transcript demonstrates that the statement was not introduced at trial and was not used by either party.

The record also reveals that Petitioner did not raise the issue of the alleged *Miranda* violation to the Delaware Supreme Court on direct or post-conviction appeal.  As a result, Claim Three is unexhausted.  At this juncture, any attempt by Petitioner to present this argument in a new Rule 61 motion would be time-barred under Rule 61(i)(1).  *See DeAngelo v. Johnson*, 2014 WL 4079357, at *12 (D. Del. Aug. 15, 2014).  Although Rule 61(i)(1) provides for an exception to the one-year time limitation if the untimely Rule 61 motion "asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final," no such right is implicated in the instant argument.  Similarly, the exceptions to Rule 61(i)(1)'s time-bar contained in Rule 61(i)(5) and (d)(2) do not apply to Petitioner's case, because he does not allege a credible claim of actual innocence, lack of jurisdiction, or that a new rule of constitutional law

11

applies to the instant argument.  Given these circumstances, the Court must treat Claim Three as exhausted but procedurally defaulted, meaning that the Court cannot review the merits of the Claim absent a showing of cause-and-prejudice or a miscarriage of justice.

Petitioner does not assert, and the Court cannot see, any cause for his default of the instant Claim.  In the absent of cause, the Court need not address the issue of prejudice. Nevertheless, since Petitioner's police statement was not used in the proceeding leading to his convictions, Petitioner cannot establish actual prejudice.  In addition, Petitioner's failure to provide new reliable evidence of his actual innocence precludes the application of the miscarriage of justice exception to his procedural default.  Thus, the Court will deny Claim Three for being procedurally barred from habeas review.

### D.   Claim Four:  Timing of Disclosure of Other Incident Involving Victim

On the morning of jury selection, the victim's mother revealed to the State that her daughter had told her that another intellectually challenged individual had touched the victim's breast over her clothing ("groping incident").  (D.I. 22 at 11)  The victim's mother did not report the incident to police. The State, upon learning the information, reported the information to trial counsel that same morning prior to opening statements.  Trial counsel did not take any action on this information during trial.  (*Id*. at 11)

Seven days after his trial, Petitioner filed a Rule 33 motion for a new trial based on this information, arguing that it was "newly discovered."  The Superior Court denied the Rule 33 motion, holding, "The information about the recent groping incident probably would not have changed the result, was known to the defense prior to trial, and the defense acknowledged that its only value would be for impeachment purposes." *Simmers*, 2015 WL 721292, at *2.

12

The Superior Court considered the fact that the information about the groping incident was not "newly discovered," noting that "the defense has not shown that the receipt of the information during jury selection prevented the defense from raising the issue," and that the defense "made a strategic decision to not raise this as an issue despite several opportunities outside the jury's presence." *Simmers*, 2015 WL 721292, at *4.   The Delaware Supreme Court affirmed that decision "on the basis of and for the reasons assigned by [the court] in its opinion." *Simmers*, 2015 WL 6459686, at *1.

In this proceeding, Petitioner appears to assert that the Delaware state courts erred in denying his Rule 33 motion, because the State's act of providing the information of the victim's other sexual assault to the defense during jury selection violated *Brady v. Maryland*, 373 U.S. 83 (1963).  Petitioner did not explicitly present an argument based on *Brady v. Maryland* in his Rule 33 motion for new trial or in his appeal of the Superior Court's denial of the Rule 33 motion. However, the State asserts, and the Court agrees, that Petitioner's argument in his Rule 33 motion for a new trial "called to mind a *Brady* violation."  (D.I. 22 at 13)  Consequently, Petitioner exhausted state remedies for the instant Claim[3] and, since the *Brady* argument was not addressed by the Delaware state courts, the Court must review the Claim *de novo*.[4]  *See Holloway v. Horn*, 355 F.3d 707, 718-19 (3d Cir. 2004).

A violation of *Brady v. Maryland* occurs when the government fails to disclose evidence materially favorable to the accused, including both impeachment evidence and exculpatory

---

[3]*See Hernandez v. Hendricks*, 270 F. App'x 150, 152 (3d Cir. 2008).

[4] **Error! Main Document Only.Error! Main Document Only.***De novo* review means that the court "must exercise its independent judgment when deciding both questions of constitutional law and mixed constitutional questions."  *Williams v. Taylor*, 529 U.S. 362, 400 (2000) (Justice O'Connor concurring).

evidence.  *See United States v. Bagley*, 473 U.S. 667, 676 (1985).  In order to prevail on a *Brady*

claim, a petitioner must establish that: (1) the evidence at issue was favorable to the accused,

either because it was exculpatory or it had impeachment value; (2) the prosecution suppressed

the evidence, "either willfully or inadvertently"; and (3) the evidence was material.  *See Strickler*

*v. Greene*, 527 U.S. 263, 281-82 (1999); *Lambert v. Blackwell*, 387 F.3d 210, 252 (3d Cir. 2004).

A petitioner demonstrates materiality of the suppressed evidence by showing a "reasonable

probability of a different result."  *Kyles v. Whitley*, 514 U.S. 419, 434 (1995).  In turn, "a

reasonable probability of a different result is accordingly shown when the government's

evidentiary suppression undermines confidence in the outcome of the trial."  *Id*.

Although the Superior Court did not analyze the argument raised in Petitioner's motion

for new trial under *Brady v. Maryland*, its conclusion that the information about the other sexual

assault was nothing more than cumulative or impeaching, was known to the defense prior to trial,

and would probably not have changed the result of the trial, precludes Petitioner from

establishing a *Brady* violation.  "Evidence is 'material' within the meaning of *Brady* when there

is a reasonable probability that, had the evidence been disclosed, the result of the proceeding

would have been different."  *Turner v. United States*, 137 S.Ct. 1885, 1893 (2017).  "In other

words, [a petitioner] is entitled to a new trial only if [he] 'establish[es] the prejudice necessary to

satisfy the 'materiality' inquiry."  *Id*.  First, the information about the additional sexual assault

was not suppressed, so there was no *Brady* violation.  Second, considering the information in

context with the entire record demonstrates that "it is too little, too weak, or too distant from the

main evidentiary points to meet *Brady*'s standards."  *Id*.  As the Superior Court held in denying

Petitioner's motion for new trial,

> [t]he defense has failed to show how a recent groping incident by a developmentally challenged man occurring at least a year after [Petitioner] was accused of digitally penetrating the Complaining Witness' vagina would tend to exculpate [Petitioner]. The unreported groping incident is temporally distant from [Petitioner's] charges and is factually dissimilar to the case at hand. The "recent incident" involved a different person, a different type of act, at a different location, did not visibly upset the Complaining Witness when she told her mother about the incident, and did not prompt her or her mother to contact the police or file a report. Thus, [Petitioner's] unsubstantiated assertion that "the admission of the unrelated accusation of sexual assault is likely to change the result of trial" lacks merit.

*Simmers*, 2015 WL 721292, at *2. Thus, the Court will deny Claim Four as meritless.

### E. Claim Five: Ineffective Assistance of Counsel

Petitioner appears to raise the following eleven ineffective assistance of counsel arguments: (a) trial counsel should have ordered forensic (DNA) testing (D.I. 1 at 6,13, 26, 28-29 of 34); (b) trial counsel should have demanded a mistrial when his probation was mentioned at trial (D.I. 1 at 6, 8, 13, 26-27, 30, 32, 34 of 34); (c) trial counsel should have sought a mistrial when the State characterized Petitioner's behavior as "luring" the victim into the woods (D.I. 1 at 27, 31, 34 of 34); (d) trial counsel should have requested that the court instruct the victim to answer all questions (D.I. 1 at 5, 8, 11, 28, 32 of 34); (e) trial and appellate counsel were ineffective in raising an issue on appeal that was barred by the rape shield law (D.I. 1 at 9,14, 24, 26-27, 31 of 34); (f) trial and appellate counsel failed to argue that his two rape convictions constituted double jeopardy (D.I. 1 at 6, 30, 34 of 34); (g) trial and appellate counsel were ineffective for not challenging his convictions based on the lack of eyewitness evidence, DNA results and or crime scene photographs (D.I. 1 passim); (h) trial counsel was cooperating or colluding with the prosecutor and the police (D.I. 1 at 6, 11, 14, 30, 34 of 34); (i) trial counsel

15

erroneously advised Petitioner to refrain from testifying during the trial (D.I. 1 at 5, 11, 27, 31 of 34); (j) postconviction counsel was covering for or copying from trial counsel (D.I. 1 at 3, 8, 24, 27, 31 of 34); and (k) trial counsel should have raised an alleged grudge between the victim's family and Petitioner during trial (D.I. 15-1 at 5, 26 of 34).

Although Petitioner presented all eleven allegations in his Rule 61 motion and post-conviction appeal, he appeared to raise many of these allegations as freestanding claims and not as ineffective assistance of counsel claims.  The Superior Court considered and rejected the ineffective assistance of counsel arguments. On post-conviction appeal, the Delaware Supreme Court noted that several of Petitioner's arguments, including those pertaining to the sufficiency of evidence and credibility of witnesses, had not been raised in Petitioner's motions for a new trial or in his direct appeal.  Generally, that would mean they were procedurally defaulted or barred under Delaware Superior Court Criminal Rule 61(i)(3), unless Petitioner established cause for relief from the procedural default and prejudice from a violation of his rights.  However, the Delaware Supreme Court noted that the Superior Court chose to give Petitioner the benefit of the doubt, treating these challenges as ineffective assistance of counsel claims for failing to raise the issues below and on direct appeal.  *See Simmers*, 2017 WL 4249945, at *1-2.  As a result, the Superior Court applied the full *Strickland* analysis to all of the claims, and the Delaware Supreme Court affirmed the Superior Court's judgment "on the basis of, and for the reasons assigned by, the Superior Court."  *Simmers*, 2017 WL 4249945, at *2.   Given these circumstances, the Court will review the Superior Court's decision under the deferential standard articulated in § 2254(d).  *See Wilson v. Sellers*, 138 S.Ct. 1188, 1193-95 (2018) (explaining that, in § 2254 context, "the federal court should look through' the unexplained decision to the last

16

related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning").

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *See Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.*

Finally, in order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that the representation was professionally reasonable. *See Strickland*, 466 U.S. at 689.

Turning to the first prong of the § 2254(d)(1) inquiry, the Court notes that the Superior Court correctly identified the *Strickland* standard applicable to Petitioner's ineffective assistance of counsel allegations. Consequently, the Superior Court's decision was not contrary to clearly established federal law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision

applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").  For the following reasons, the Court also concludes that the Superior Court reasonably applied *Strickland* in denying all eleven allegations.

### 1.   Claim Five (a): Failure to order DNA testing

Petitioner contends that trial counsel was ineffective for failing to order forensic DNA testing.  The Superior Court rejected this allegation after determining that trial counsel made a proactive strategic decision not to request DNA testing.

After reviewing the record, the Court concludes that the Superior Court reasonably applied *Strickland* in rejecting the instant argument.  In his Rule 61 affidavit, trial counsel explained he opted against ordering DNA testing because there was a possibility that the test might find Petitioner's DNA in the sample based on the fact that Petitioner had admitted physical contact with the victim.  (D.I. 23-9 at 122)  Trial counsel also explained that he believed a negative finding would have been of little assistance, given that this was not a case involving bodily fluids.  (*Id*. at 122-23)  In addition, trial counsel strategically planned to use the State's failure to perform DNA testing to impeach and undermine the State's case.  (*Id*. at 124)

The decision whether to request DNA or fingerprint testing is a tactical one, and reasoned tactical decisions by counsel are entitled to deference.  *See Strickland*, 466 U.S. at 690; *Curry v. Secretary, Florida Department of Corrections*, 735 F. App'x 609, 612 (11th Cir. 2018); *United States v. Roberts*, 417 F. App'x. 812, 823 (10th Cir. 2011).  Other courts have held that counsel reasonably declined to test DNA evidence when doing so would have little exculpatory effect and would risk inculpating the defendant, as well as when counsel declined to test DNA evidence

18

as part of a strategy to portray the lack of testing as a failure of the police to conduct an adequate investigation.. *See Curry*, 735 F. App'x at 612; *Roberts*, 417 F. App'x at 823 (finding counsel reasonable for deciding not to test DNA evidence on gun when DNA testing would not have exculpated defendant and there was a possibility that defendant's own DNA would be found); *Baker v. Yates*, 2007 WL 2156072 at *15 (S.D. Cal. July 25, 2007) (finding trial strategy reasonable where counsel did not know what the result of DNA testing would be and chose to argue to the jury that the government had no physical evidence and had conducted a poor investigation of the case).  When viewed within the foregoing legal framework, trial counsel's strategic reasons for not obtaining DNA testing fall within the presumption of reasonableness.

In turn, Petitioner has not demonstrated a reasonable probability that the result of his trial would have been different but for the lack of DNA evidence.  Therefore, the Court will deny Claim Five (a) for failing to satisfy § 2254(d)(1).

### 2.  Claims Five (b) and (c): Failure to request mistrial

In Claim Five (b), Petitioner contends that trial counsel was ineffective for failing to demand a mistrial when a police witness testified that he had obtained Petitioner's address from probation and parole.  In Claim Five (c), Petitioner asserts that trial counsel should have sought a mistrial when the State characterized Petitioner's behavior as "luring" the victim into the woods. Once again, the Superior Court denied Petitioner's argument after determining that trial counsel had reasonable strategic reasons for not requesting a mistrial.

Trial counsel's explanations in his Rule 61 affidavit support the Superior Court's conclusion.  Trial counsel explained that he decided to request a curative instruction concerning the probation and parole remark instead of a mistrial, in part because a mistrial would have

provided the State with an opportunity to remedy weaknesses in the State's case that would have ultimately hurt Petitioner's case.  (D.I. 23-9 at 121)  As for the State's use of the term "luring" during closing argument, trial counsel properly objected and the State corrected the remark on the record in front of the jury.  Both of these decisions fall within the wide range of reasonable professional assistance contemplated by *Strickland*.  In turn, it is unlikely that a mistrial would have been granted for either of these events given the curative instruction and the State's corrective action. Thus, the Court will deny Claims Five (b) and (c) for failing to satisfy § 2254(d)(1).

### 3.  Claim Five (d):  Failure to request that victim answer questions

In Claim Five (d), Petitioner contends that trial counsel provided ineffective assistance by failing to ask the Superior Court to instruct the victim to answer all questions.  The Superior Court found the claim to be "vague and conclusory," and noted that Petitioner did not "reference any particular unanswered question(s) or what prejudice resulted."  (D.I. 23-9 at 173)  Notably, in his Rule 61 affidavit, trial counsel explained that he made a strategic decision to challenge the quality of the State's investigation rather than the verbal abilities of a mentally challenged individual.  (*Id*. at 124)   The Court will deny Claim Five (d) because the Superior Court reasonably applied *Strickland* in rejecting Petitioner's argument.

### 4.  Claims Five (e) and (f): Failure to object to application of rape shield law and double jeopardy

In Claim Five (e), Petitioner contends that trial and appellate counsel provided ineffective assistance by raising an issue on appeal that was barred by the rape shield law.  This argument stems from the State's disclosure of the victim's allegation regarding an unrelated groping incident involving someone else that the Court discussed in Claim Four.  *See supra* at Section

20

III.D.  Petitioner appears to believe that the Superior Court denied his motion for new trial on the premise that Delaware's Rape Shield Statute prohibited admitting the disclosure.  However, the "rape shield law" was not addressed during Petitioner's case, except in standard explanatory language included in the State's answering brief.  (*See* 23-17 at 44 (n. 14 in the brief)).  In his Rule 61 proceeding, the Superior Court denied the instant ineffective assistance of counsel argument as meritless because the rape shield law was not a factor in the denial of the motion for new trial.  Since Petitioner's instant allegation of ineffective assistance is premised on an incorrect understanding of what actually occurred, the Court will deny Claim Five (e) as meritless.

In Claim Five (f), Petitioner contends that trial and appellate counsel should have argued that double jeopardy prevented Petitioner from being charged with two counts of rape for his actions because, in his mind, digital penetration of the vagina and anus during one incident are one crime.  However, under Delaware statutory law, separate offenses may be charged for multiple acts of sexual contact with the same victim.  *See* 11 Del. Code § 762(c).  Since an attorney does not provide ineffective assistance by failing to raise a meritless argument,[5] the Superior Court did not unreasonably apply *Strickland* in denying the instant allegation. The Court will deny Claim Five (f) for failing to satisfy § 2254(d).

### 5.  Claim Five (g): Failure to Challenge Sufficiency of the Evidence

Next, Petitioner asserts that trial and appellate counsel were both ineffective for failing to argue that there was insufficient evidence to convict him because the State did not produce eyewitness evidence, DNA results, and relevant crime scene photos.  Petitioner raised the

---

[5]***Error! Main Document Only.****See United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999).

sufficiency of the evidence issue as a freestanding claim in his Rule 61 motion.  As the Delaware Supreme Court explained on post-conviction appeal, the Superior Court treated Petitioner's various challenges "to the sufficiency of the State's evidence as a claim that both his trial and appellate counsel were ineffective for failing to raise the claim [at trial] or on direct appeal." *Simmers*, 2017 WL 4249945, at *1.  The Delaware Supreme Court further explained that the Superior Court had properly applied the *Strickland* standard, "carefully consider[ing] each of [Petitioner's] claims of ineffective assistance and [finding] that all of the alleged errors were, in fact, objectively reasonable strategic decisions made by counsel."  *Simmers*, 2017 WL 4249945, at *2.

Under well-settled Delaware law, "the victim's identification of the defendant as the perpetrator, even in the absence of any physical evidence linking the defendant to the crime, constitutes sufficient evidence to support a defendant's conviction of a sexual crime, as long as the victim's testimony establishes every element of the offense charged."  *Philhower v. State*, 150 A.3d 777 (Table), 2016 WL 6407472, at *2 (Del. Oct. 28, 2016).  In this case, the victim's testimony was sufficient to establish Petitioner's guilt because she identified Petitioner as the perpetrator and described the acts he had performed.  Consequently, the Court concludes that the Delaware state courts reasonably applied *Strickland* in holding that trial and appellate counsel did not render ineffective assistance by failing to challenge the sufficiency of the evidence.  The Court will deny Claim Five (g) for failing to satisfy § 2254(d).

### 6.  Claim Five (h) and (i):  Collusion and post-conviction counsel "covering"

In Claim Five (h), Petitioner contends that trial counsel was colluding or cooperating with the State and police.  In Claim Five (i), he alleges that post-conviction counsel was covering for

22

or copying from trial counsel.  Petitioner does not provide any factual background to support the allegations.  Therefore, the Court will deny these vague and conclusory arguments as meritless.

### 7.  Claim Five (j):  Improper advice about testifying

In Claim Five (j), Petitioner appears to be arguing that trial counsel provided ineffective assistance by advising him not to testify.  Specifically, Petitioner asserts he did not "testify in the Jury Trial . . . my PD ask me not to talk because they don't have anything on you . . . I got 20 years . . .  for not talking in the Jury Trial."  (D.I. 1 at 5, 11, 27, 31)  Petitioner raised a similar issue in his Rule 61 motion.  The Superior Court only briefly mentioned the instant Claim in its decision, but generally found that trial counsel's performance was not "substandard" and Petitioner was not "prejudiced or prevented from having a fair trial or that any alleged errors of Trial Counsel or Appellate Counsel weakened [Petitioner's] appeal."  (D.I. 23-9 at 167)

Although the Delaware state courts did not address Petitioners cursory claim about not testifying, the trial court's full and proper colloquy with Petitioner demonstrates that he understood his constitutional right to take the stand and that he made a knowing, intelligent and voluntary decision to waive his right to testify:

> THE COURT: [Trial counsel], do you have any witnesses?
>
> TRIAL COUNSEL: I do, your Honor. Your Honor, also I'd like the Court to address [Petitioner] on his decision not to testify.
>
> THE COURT: Okay.
>
> TRIAL COUNSEL: I discussed it with him stand up, sir -- and he's choosing to not testify.
>
> THE COURT: Okay. [Petitioner], did you just hear what your attorney said?
>
> PETITIONER: Yes, ma'am.

23

THE COURT: Your attorney says that you have decided that you do not want to testify in this trial?

PETITIONER: Right.

THE COURT: I want to be sure that you understand what you're doing, and I want to be sure that you realize that it is your right to testify just as much as it is your right to not testify, it is your choice and nobody else's choice.  And do you understand that I will give an instruction to the jury that if you do not testify, they cannot use that against you?

PETITIONER: Yes, your Honor.

THE COURT: And do you understand that if you do testify, then it's possible the State may use any, or some of any prior criminal background you may have against you?

PETITIONER: (Nods head.)

THE COURT: Okay. So have you had enough time to talk to your attorney about this choice?

PETITIONER: Yes, your Honor.

THE COURT: And do you feel that you understand what your choice is?

PETITIONER: Yes, your Honor.

THE COURT: Okay. All right.  And having discussed this with your attorney, and having explained it to you now, and the fact that you feel that you understand what your rights are to testify or not testify, tell me, what is your choice?

PETITIONER: I choose not to testify, your Honor.

THE COURT: Okay. Thank you very much. All right. So we will.- you can have a seat, [Petitioner].

PETITIONER: Thank you.

(D.I. 23-17 at 3-4)

24

Petitioner has not provided any support for his contention that trial counsel told him not to testify, and the foregoing colloquy demonstrates that he understood his rights. Given these circumstances, the Court concludes that the Delaware courts did not unreasonably apply *Strickland* in denying Claim Five (j).

### 8. Claim Five (k): Failure to argue grudge as a defense

In his final Claim, Petitioner contends that trial counsel provided ineffective assistance by failing to present during trial the fact the victim's family had a grudge against Petitioner's family based on some prior history between the victim's brother and Petitioner's daughter. Petitioner raised this argument in his Rule 61 motion, and the Superior Court denied it, finding it to be part of a group of "conclusory, speculative, unverified and merit[less] claims." (D.I. 23-9 at 169-70)

Petitioner's conclusory statement about a grudge fails to establish a reasonable probability that the outcome of his trial would have been different but for trial counsel's failure to raise the issue during trial. Therefore, the Court concludes that the Delaware state courts reasonably applied *Strickland* in denying the Claim Five (k).

## IV.  CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition does not warrant relief.  Reasonable jurists would not find this conclusion to be debatable.  Accordingly, the Court will not issue a certificate of appealability.

## V.      CONCLUSION

For the reasons discussed, the Court will deny the Petition without holding an evidentiary hearing.  An appropriate Order will be entered.